IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARCELINO ALBUERNE and RUBY JENKINS,<br><br>Plaintiffs,<br><br>v.<br><br>RENT RECOVERY SOLUTIONS, LLC,<br><br>Defendant. | Case No. 24-CV-04043-JAR |

## MEMORANDUM AND ORDER

Plaintiffs Marcelino Albuerne and Ruby Jenkins bring this action against Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), TransUnion LLC ("TransUnion"), and Rent Recovery Solutions, LLC ("Rent Recovery"), alleging violations of the Fair Credit Reporting Act ("FCRA"). Plaintiffs' Complaint asserts three Counts: Counts I and II against Equifax, Experian, and TransUnion, and Count III against Rent Recovery.[1] Equifax, Experian, and TransUnion have since been dismissed from this case,[2] leaving only Count III, which alleges that Rent Recovery violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation after receiving notice of Plaintiffs' credit reporting disputes.

This matter is before the Court on Rent Recovery's Motion for Summary Judgment (Doc. 79), Plaintiffs' Motion for Partial Summary Judgment (Doc. 85), and Rent Recovery's Motion to Exclude Expert Testimony and Report (Doc. 83). The motions are fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court grants Plaintiffs'

---

[1] Doc. 1.

[2] Docs. 51, 53, 60.

motion for partial summary judgment, denies Rent Recovery's motion for summary judgment, and denies Rent Recovery's motion to exclude expert testimony as moot.

I.   **The Parties' Cross-Motions for Summary Judgment**

   **A.  Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[3]  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party.[4]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[5]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[7]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[8]  Once the movant has met this initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[9]  The non-moving party may not simply rest upon its pleadings to satisfy its

---

[3] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[4] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[5] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[6] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[7] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[8] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

[9] *Anderson*, 477 U.S. at 256.

burden.[10] Rather, the non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant."[11] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."[12] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[13]

"Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[14] Cross summary judgment motions should be evaluated as two separate motions.[15] Just because the Court denies one does not require that it grant the other.[16]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[17]

---

[10] *Id.*; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[12] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[13] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citations omitted).

[14] *James Barlow Fam. Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[15] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

[16] *Id.*

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

B. **Uncontroverted Facts**

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to the non-moving party.

1. **Plaintiffs' Final Rent Payment Dispute with Montane**

Plaintiffs, then a married couple, jointly rented an apartment at the Montane Apartment Complex ("Montane") in Parker, Colorado. Plaintiffs made their monthly rent payments through the Pay Ready application. Plaintiffs' lease was scheduled to end in September 2022.

On September 21, 2022, Plaintiffs went to Montane's leasing office and delivered a $927.10 cashier's check for the final and full payment due under their lease plus other fees. Plaintiffs gave the cashier's check to a Montane representative whose name they do not recall. That representative provided the check to Montane's assistant property manager, Ruth White. Later that same day, Plaintiffs emailed Montane's billing department to confirm receipt of the payment. White responded and confirmed that Montane had received Plaintiffs' check and that it would be posted to their account.

After Plaintiffs moved out and their lease ended, Montane's billing department emailed Plaintiffs on October 5, 2022, stating that Plaintiffs still owed an unpaid balance of $927.10 on their Montane account. Albuerne responded to the email with (1) a screenshot reflecting a $927.10 withdrawal from his bank account on September 21, 2022, and (2) the email in which White confirmed Montane's receipt of the check.

2. **Placement of the Montane Account with Rent Recovery**

On February 13, 2023, Plaintiffs' Montane account was placed for collection with Rent Recovery. That same day, Pay Ready, acting as an intermediary between Rent Recovery and Montane, forwarded Rent Recovery an email thread reflecting Montane's response to the payment issue. In that thread, Montane stated it did not have a check or cashier's check for

Plaintiffs' account, and that it had looked back through the physical checks from September and October 2022 as well as its electronic system but did not find a check for that amount. Montane suggested that, if the cashier's check was issued, Plaintiffs could ask their bank to trace whether it was cashed and by whom. Yasmin Appawu, Rent Recovery's compliance auditor and administrator, saved the contents of that email thread in Rent Recovery's account notes.

Around this time, Plaintiffs discovered that a Rent Recovery collection account with a balance of $927.00 was appearing on their credit reports. Rent Recovery furnishes debt information to the national consumer reporting agencies ("CRAs"), and it had furnished information to the CRAs about Plaintiffs' Montane rental account. The account was reported as owed to Rent Recovery, reflected a partial account number of 424***, listed an open date of February 13, 2023, reported a balance of $927.00, and identified Montane as the original creditor. On March 8, 2023, Albuerne called Rent Recovery to dispute the debt and told Rent Recovery that he had given Montane a cashier's check in September 2022 for the amount at issue. In response, Rent Recovery advised Albuerne that he could mail documentation supporting his dispute.

On March 28, 2023, Rent Recovery received written correspondence from Albuerne disputing the account. The correspondence included: (1) the October 5, 2022 email from Montane stating Plaintiffs owed $927.10; (2) a screenshot reflecting a $927.10 withdrawal from Albuerne's bank account on September 21, 2022; and (3) a November 4, 2022 email from Albuerne to Montane stating he was still being told he had not paid the disputed amount, asserting that three people at the office witnessed him pay the disputed amount, and attaching the same bank account screenshot.

In response to the March 28, 2023 correspondence, Appawu opened an investigation. As part of her investigation, Appawu reviewed the materials Albuerne provided and reviewed Rent Recovery's account notes. The account notes reflected that Albuerne had previously disputed the debt by phone and asserted he paid Montane with a cashier's check in September 2022, and that Montane had reported that it searched its physical checks from September and October 2022 and its electronic system, but could not locate or confirm posting of the payment.

Rent Recovery has a policy to contact its client upon receipt of a mailed dispute. However, Appawu did not contact Montane at that time because, in her view, Montane had already informed Rent Recovery that it searched for the check and could not find it.

Between March and July 2023, Albuerne made multiple additional phone calls to Rent Recovery disputing the account and reiterating that he had paid Montane by cashier's check in September 2022. Rent Recovery's collectors handled these telephonic disputes and documented them in the account notes. On July 20, 2023, one of Albuerne's telephonic disputes was escalated to Appawu. That day, Appawu emailed Montane requesting a reinvestigation and asking Montane to confirm whether the balance had been paid in full directly to the community, including the date of any payment.

On July 30, 2023, Montane responded that it had looked back and did not see payment for Plaintiffs' account. Based on Montane's response, Appawu confirmed that Montane did not receive Albuerne's cashier's check.

### 3. Plaintiffs' Disputes to the CRAs and Rent Recovery's Investigation

On October 18, 2023, Albuerne mailed disputes to Equifax, Experian, and TransUnion challenging Rent Recovery's reporting of the collection account. In his dispute letters, Albuerne asserted that the account was inaccurate because he had paid the balance due with a cashier's check on September 21, 2022. In support of his disputes, he enclosed the September 21, 2022

6

email from Montane in which White confirmed receipt of the cashier's check, along with a screenshot from his bank account reflecting a $927.10 withdrawal.  The CRAs received Albuerne's disputes via USPS Certified Mail.

In December 2023, Jenkins similarly disputed the collection account with the CRAs by mailing disputes to Equifax on December 12, 2023, and to Experian and TransUnion on December 14, 2023.  Jenkins stated the account was inaccurate because she had paid the disputed amount with a cashier's check on September 21, 2022.  She enclosed the same supporting materials, including White's email confirming receipt of the check and the bank screenshot reflecting the $927.10 withdrawal.  The CRAs received Jenkins's disputes via USPS Certified Mail.

After receiving Plaintiffs' disputes, the CRAs transmitted automated credit dispute verifications ("ACDVs") to Rent Recovery.  An ACDV is an electronic form that CRAs use to forward a consumer's credit reporting dispute to the company that reported the account and to request an investigation and response.  Rent Recovery received three ACDVs relevant here: (1) a TransUnion ACDV concerning Albuerne dated October 27, 2023; (2) an Equifax ACDV concerning Jenkins dated December 29, 2023; and (3) an Experian ACDV concerning Jenkins dated February 2, 2024.

Appawu opened an investigation for each ACDV Rent Recovery received.  In each investigation, Appawu (1) located the account using the demographic information contained in the ACDV; (2) reviewed the dispute code, FCRA-related information, and any images attached to the ACDV; and (3) reviewed Rent Recovery's account notes to determine whether the notes contained additional information about the dispute.

Based on her review of the ACDVs and the attached materials, Appawu understood that Plaintiffs were disputing the debt on the ground that they had paid Montane with a cashier's check in September 2022, and she recognized the dispute as the same payment issue she had investigated previously. The supporting materials attached to the ACDVs included the September 2022 email chain between Albuerne and Montane, in which White stated that Montane had received Albuerne's cashier's check, which had not been part of Rent Recovery's earlier dispute investigations.

After reviewing the ACDVs, Appawu also reviewed Rent Recovery's account notes. Those notes reflected that, in February 2023 and again in July 2023, Montane had confirmed that it did not receive Plaintiffs' payment and that the payment had not been posted to Montane's system. Appawu noted that although the email in which White confirmed receipt of Plaintiffs' cashier's check was dated September 2022, Montane later reported that it could not locate the cashier's check and did not show the payment as posted. Appawu further noted that the images attached to the ACDVs included screenshots of a bank account withdrawal for the disputed amount, but Plaintiffs did not identify the bank associated with the account or provide a full bank account number.

Rent Recovery's policy is to contact its client when a consumer claims to have previously paid a disputed debt. However, Appawu did not contact Montane again because, in her view, Montane had already informed Rent Recovery twice that it did not receive the payment as Plaintiffs claimed. Appawu then completed each investigation and responded to the ACDVs that the "[a]ccount information [was] accurate as of [the] date reported."[18] Rent Recovery did not

---

[18] Doc. 81-4 ¶ 58.

modify, delete, or permanently block the information that Plaintiffs disputed with the national CRAs.

On January 13, 2024, Equifax issued a dispute response to Jenkins stating that Rent Recovery had verified that the subject balance was being accurately reported. On February 22, 2024, Jenkins received a dispute response from Experian, likewise stating that Rent Recovery had verified the subject balance was being accurately reported. On March 13, 2024, Jenkins downloaded her updated TransUnion credit report and saw that the Rent Recovery collection account was still being reported. The following day, March 14, 2024, Jenkins retrieved her updated Equifax credit report and again saw that the Rent Recovery account was still being reported.

### C. Discussion

In Count III, Plaintiffs allege that Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation after receiving notice of Plaintiffs' disputes from the CRAs. Defendant moves for summary judgment on this claim. Plaintiffs move for partial summary judgment on liability only, reserving the issue of damages for trial.

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."[19] "The FCRA imposes obligations on three types of entities: consumer reporting agencies, users of consumer reports and furnishers of information to consumer reporting agencies."[20]

A "furnisher of information" is "an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies."[21] The FCRA

---

[19] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).

[20] *Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350, 1353 (D. Kan. 2006).

[21] *Id.* at 1352 n.1.

"imposes two sets of duties on furnishers of information."[22] First, under § 1681s-2(a), furnishers of information have a general duty to provide accurate information to a consumer reporting agency.[23] Congress did not create a private right of action for violations of § 1681s-2(a).[24] Second, under § 1681s-2(b), furnishers of information have a duty, after receiving notice from a CRA of a dispute by a consumer regarding the completeness or accuracy of an account, to:

> (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.[25]

Unlike § 1681s-2(a), § 1681s-2(b) creates a private cause of action by a consumer against a furnisher of credit information.[26] To establish a violation of § 1681s-2(b), Plaintiffs must show (1) the information Rent Recovery furnished was inaccurate or incomplete, and (2) Rent Recovery's investigation into the accuracy of the furnished information was unreasonable.[27]

The parties do not dispute that Rent Recovery is a furnisher of information, nor do they dispute that the information Rent Recovery furnished was inaccurate or incomplete. The parties' cross-motions instead turn on the reasonableness of Rent Recovery's investigation. Plaintiffs contend that the uncontroverted facts establish that Rent Recovery's investigation into the accuracy of the information it furnished was unreasonable and that Plaintiffs are therefore

---

[22] *Tilley v. Glob. Payments, Inc.*, 603 F. Supp. 2d 1314, 1322 (D. Kan. 2009).

[23] *Id.*

[24] *Id.*

[25] *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178–79 (10th Cir. 2013) (quoting *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009)).

[26] *Tilley*, 603 F. Supp. 2d at 1322.

[27] *Ward v. Nat'l Credit Sys., Inc.*, No. 21-CV-02597-NYW-JPO, 2024 WL 2846609, at *4 (D. Colo. June 5, 2024).

entitled to summary judgment. Rent Recovery contends that the uncontroverted facts establish that its investigation was reasonable and that it is therefore entitled to summary judgment. Accordingly, the Court resolves the parties' cross-motions based on whether the record establishes the reasonableness or unreasonableness of Rent Recovery's investigation.

A "furnisher's duty to investigate arises only after a CRA notifies the furnisher of a dispute."[28] "When a furnisher receives a dispute notice from a CRA, it must undertake a *reasonable* investigation of the dispute."[29] "A reasonable investigation is one that a reasonably prudent person would undertake under the circumstances."[30] Whether an investigation was reasonable under the FCRA "turns on what relevant information was provided to a furnisher by the CRA giving notice of a dispute."[31] "The reasonableness of the investigation is to be determined by an objective standard, and the burden of showing the investigation was unreasonable is on the plaintiff."[32] "Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question."[33]

Beginning with Plaintiffs' motion for summary judgment, Plaintiffs contend that Rent Recovery's investigation was unreasonable because Rent Recovery failed to further investigate Plaintiffs' dispute and instead relied on its prior investigations, even after Plaintiffs provided new information through the ACDVs, including White's September 21, 2022 email, in which White

---

[28] *Willis v. Cap. One Corp.*, 611 F. App'x 500, 502 (10th Cir. 2015).

[29] *Hampton v. Barclays Bank Delaware*, 478 F. Supp. 3d 1113, 1138 (D. Kan. 2020) (emphasis added) (citing *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016)).

[30] *Maiteki*, 828 F.3d at 1275 (citation modified) (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014)).

[31] *Id.* (quoting *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 617 (6th Cir. 2012)).

[32] *Id.* (citation modified) (quoting *Chiang v. Verizon New Eng. Inc.*, 595 F.3d 26, 37 (1st Cir. 2010)).

[33] *Id.* (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

confirmed that Montane had received Plaintiffs' cashier's check for the disputed amount. Plaintiffs argue that, once Defendant received this documentation, a reasonably prudent investigation required more than verifying the account based on Defendant's internal notes and prior communications with Montane.

In support of their argument, Plaintiffs rely on *Parsell v. First Tech Fed. Credit Union*,[34] where the court granted partial summary judgment to the plaintiff after concluding that the defendant failed to conduct a reasonable investigation in response to a later ACDV, even though that ACDV included additional supporting documents that had not been part of the earlier disputes.[35] Rather than addressing the new materials, the furnisher treated the later dispute as duplicative of the prior disputes and verified the account without further inquiry.[36] The court explained that it "agrees with [the plaintiff] that she is entitled to summary judgment with respect to [the furnisher's] response to the fifth ACDV submitted in connection with her dispute . . . because [in part] [the furnisher] erroneously treated it as duplicative when [the plaintiff] had, in fact, submitted additional documents to TransUnion that were included in the ACDV."[37]

The Court agrees with Plaintiffs and finds *Parsell* persuasive. The record reflects that, when Rent Recovery received the three ACDVs, they included White's September 21, 2022 confirmation email, which had not been part of Rent Recovery's earlier dispute investigations. Despite receiving this new documentation, Rent Recovery did not take additional steps to reconcile White's confirmation email with its account notes reflecting Montane's later position that it did not have a check for Plaintiffs' account. Although Rent Recovery's policy calls for

---

[34] No. SA-22-CV-01002-XR, 2025 WL 687965, at *7–9 (W.D. Tex. Mar. 3, 2025).

[35] *Id.* at *7.

[36] *Id.*

[37] *Id.*

contacting its client when a consumer disputes a debt as previously paid, Rent Recovery did not contact Montane to address White's confirmation email or to ask what happened to the cashier's check after White confirmed Montane had received it, why Montane later could not locate the check, or why the payment was never posted to Plaintiffs' account.  Instead, like the furnisher in *Parsell* that treated a later ACDV as duplicative despite the inclusion of additional supporting materials, Rent Recovery treated Plaintiffs' ACDVs as similar to Plaintiffs' prior disputes and relied only on the earlier confirmations from Montane in verifying the account as accurate.

        Defendant argues that the facts of this case instead "fall squarely within the facts of" the Tenth Circuit's decision in *Maiteki v. Marten Transport Ltd.*[38]  In *Maiteki*, a former truck driver disputed a negative safety code his former employer reported to a CRA that publishes reports regarding truck drivers' driving records.[39]  The plaintiff asserted that the negative safety code was "incorrect" because he had "no accidents/incidents" listed.[40]  The employer investigated the dispute by reviewing the information it received from the CRA, the plaintiff's personnel file, and its internal human-resources records.[41]  The personnel file included an Illinois State Police driver/vehicle examination report indicating that the plaintiff exceeded the speed limit, along with related disciplinary warnings.[42]  The human-resources records included entries reflecting speed-monitoring data gathered by a third-party system used on the employer's trucks and a warning issued to the plaintiff based on that data.[43]  By the time of the reinvestigation, the

---

[38] 828 F.3d 1272 (10th Cir. 2016); Doc. 95 at 14.

[39] *Maiteki*, 828 F.3d at 1273–74.

[40] *Id.* at 1274.

[41] *Id.*

[42] *Id.*

[43] *Id.*

employer no longer had access to the underlying third-party speed-monitoring records.[44]  Rather than attempting to obtain those records from the vendor, the investigator contacted the fleet manager who made the relevant entry in the plaintiff's personnel file and confirmed that she had reviewed the underlying speed-monitoring reports and that the human-resources records were accurate.[45]

On appeal, the plaintiff argued the investigation was unreasonable because the employer failed to contact either the Illinois State Police or the speed-monitoring vendor to verify the information in its files.[46]  The Tenth Circuit rejected that argument and affirmed summary judgment for the employer.[47]  As to the Illinois State Police report, the court reasoned that, because the investigator "had no reason to question the documents," her failure to contact the Illinois State Police "does not cast doubt on the reasonableness of the investigation."[48]  As to the third-party speed-monitoring data, the court explained that "instead of relying on the bare" human-resources records, the investigator followed up with the fleet manager, who confirmed she had reviewed the underlying speed-monitoring reports and that the human-resources records were accurate, and that "[i]t was reasonable for [the investigator] to rely on [the fleet manager's] confirmation."[49]

Defendant's reliance on *Maiteki* is unavailing.  Unlike the investigator in *Maiteki*, Appawu had reason to question the reliability of Rent Recovery's existing records because the ACDV materials included White's 2022 email confirmation.  Yet after receiving the ACDVs

---

[44] *Id.*

[45] *Id.*

[46] *Id.* at 1276.

[47] *Id.* at 1276–77.

[48] *Id.* at 1276.

[49] *Id.* at 1276–77.

containing that email, Appawu did not follow up with White or anyone at Montane, nor did she seek to reconcile White's confirmation with Montane's later position that it could not locate the cashier's check.

Defendant also relies on several cases in which courts have found a furnisher's investigation reasonable when the furnisher reviewed the ACDV and compared the disputed information to its internal account records.[50] But in those cases, the dispute information transmitted through the ACDVs did not include documentary materials that conflicted with the furnisher's records or otherwise supplied a concrete reason to question the reliability of the information on file.

Defendant further relies on *Hampton v. Barclays Bank Delaware*.[51] There, the court found that the furnisher conducted a reasonable investigation by reviewing each ACDV it received, including dispute codes and any attached document images, and comparing the disputed information against its underlying loan records and verification materials to confirm the ACDV matched the furnisher's records.[52] And when the plaintiff specifically alleged identity fraud in two disputes, the furnisher took additional steps to verify the loan at issue, including confirming that the IP address associated with the loan application geolocated to the plaintiff's location, that the income-verification documents came from the plaintiff's actual employer, that

---

[50] *Collins v. Diversified Consultants, Inc.*, No. 15-CV-02115-RBJ-NYW, 2016 WL 11693446, at *5–6 (D. Colo. July 19, 2016), adopted by *Collins v. Diversified Consultants, Inc.*, No. 15-CV-2115-RBJ-NYW, 2017 WL 971528 (D. Colo. Mar. 13, 2017) (finding the furnisher's investigation reasonable where it reviewed the ACDV, confirmed the consumer's identifying information, and compared the disputed debt to its internal account records, despite not contacting the original creditor, because the plaintiff offered no evidence he did not owe the debt or that the reported amount was wrong); *Stewart v. Equifax Info. Servs., LLC*, 320 F. Supp. 3d 1186, 1204–06 (D. Kan. 2018) (finding the furnisher's investigation reasonable where it reviewed the ACDV and its account records and verified plaintiff's authorized-user status to the CRA even though the ACDV was coded "not his/her account," because the ACDV included no fraud or identity-theft code, no supporting documents, and no indication that plaintiff disputed her authorized-user status).

[51] 478 F. Supp. 3d 1113 (D. Kan. 2020).

[52] *Id.* at 1138.

calls relating to the account originated from the phone number on file, and that the voices on recorded calls about the account were the same.[53] Based on this information, the furnisher maintained that the disputes did not give it reason to doubt the accuracy of its records, and the court agreed.[54]

Again, this case is different. Here, White's confirmation email, which was attached to the ACDVs, gave Rent Recovery reason to doubt the accuracy of the records on which it relied to verify the debt. Yet Rent Recovery took no additional steps to address that conflict. And unlike in *Hampton*, where the furnisher corroborated the loan information through additional investigative steps, Rent Recovery conducted no follow-up to reconcile the inconsistency presented by the ACDV materials. Instead, it verified the account without contacting Montane to address the conflict or determine why Montane's records did not reflect the payment that White confirmed Montane had received.

Accordingly, the Court finds that Plaintiffs have met their burden of establishing that Defendant's investigation was unreasonable "beyond question."[55] The uncontroverted record shows that, after receiving Plaintiffs' ACDVs containing White's confirmation email, Defendant verified the account as accurate without taking any steps to reconcile White's confirmation with Montane's prior communications reflected in Defendant's notes. On this record, and in light of the authorities discussed above, no reasonable jury could conclude that Defendant conducted a reasonable investigation under § 1681s-2(b). Plaintiffs' motion for partial summary judgment on liability is therefore granted. Because Plaintiffs are entitled to summary judgment on liability,

---

[53] *Id.* at 1139.

[54] *Id.*

[55] *Maiteki v. Marten Transp. Ltd.*, 828 F.3d 1272, 1275 (10th Cir. 2016) (quoting *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).

and because Defendant's motion for summary judgment is based solely on its contention that its investigation was reasonable, Defendant's motion for summary judgment is denied.

## II.     Rent Recovery's Motion to Exclude Expert Testimony

Rent Recovery has also filed a *Daubert* motion challenging Plaintiffs' designated expert, Douglas Hollon, who is offered primarily to provide opinion testimony regarding the adequacy of Rent Recovery's policies and procedures for investigating consumer disputes and the reasonableness of Rent Recovery's investigation into Plaintiffs' credit reporting disputes. Because the Court resolves the parties' cross-motions for summary judgment and grants Plaintiffs summary judgment on liability without relying on Hollon's proposed testimony, Rent Recovery's *Daubert* motion is denied as moot.

**IT IS THEREFORE ORDERED BY THE COURT** that Rent Recovery's Motion for Summary Judgment (Doc. 79) is **denied,** and Plaintiffs' Motion for Partial Summary Judgment (Doc. 85) is **granted**.

**IT IS FURTHER ORDERED** that Rent Recovery's Motion to Exclude Expert Testimony and Report (Doc. 83) is **denied as moot**.

**IT IS SO ORDERED.**

Dated: February 25, 2026

                                                                                S/ Julie A. Robinson
                                                                                JULIE A. ROBINSON
                                                                                UNITED STATES DISTRICT JUDGE