# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| MARCELINO ALBUERNE and RUBY JENKINS,<br><br>Plaintiffs,<br><br>v.<br><br>RENT RECOVERY SOLUTIONS, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 5:24-cv-04043-JAR |

**DECLARATION OF BRYCE B. BELL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

I, Bryce B. Bell, being of lawful age and having personal knowledge of the matters stated below, declare and state as follows:

## I. INTRODUCTION AND BASIS FOR THIS DECLARATION

1. I am the founding and managing partner of Bell Law, LLC, 2600 Grand Blvd., Suite 580, Kansas City, Missouri 64108. I am licensed to practice law in the State of Kansas (Kansas Bar No. 20866) and in the State of Missouri, the 8th Circuit Court of Appeals, the 10th Circuit Court of Appeals, and the Western and Eastern Districts of Missouri. I am also admitted to practice before this Court. I am over the age of eighteen, and if called to testify to the contents of this Declaration, I could and would competently do so.

2. I submit this Declaration at the request of Duran L. Keller, counsel of record for Plaintiffs Marcelino Albuerne and Ruby Jenkins, in support of Plaintiffs' Motion for Attorneys' Fees and Costs following the jury verdict returned in this matter on August 14, 2026.

3. I am not counsel of record in this action. I have no financial interest in the outcome of this litigation or in the fee determination sought by Plaintiffs' counsel, and I have no

attorney-client relationship with either Plaintiff. I am not being compensated for preparing this Declaration.

4. In preparing this Declaration, I reviewed the following materials: (a) the Verdict Form entered in this matter (ECF No. 170, filed Aug. 14, 2026); (b) the docket in this action; and (c) the Declarations of Duran L. Keller and Beth Findsen and the contemporaneous time and expense records. I also relied on my own knowledge of the Kansas City legal market and of rates charged and approved in consumer-protection litigation in this District.

## II. QUALIFICATIONS AND EXPERIENCE

5. I founded Bell Law, LLC in 2010. Bell Law is a Midwest litigation firm that represents plaintiffs in individual and class actions in state and federal courts and in arbitration, with a practice concentrated in consumer protection, consumer financial fraud, credit reporting, auto fraud, debt collection, landlord-tenant, and data breach litigation. Over the last decade the firm has recovered over $75 million on behalf of injured consumers.

6. For over fifteen years my practice has been devoted to representing consumers in litigation, including class and collective actions, in the state and federal courts of Kansas and Missouri and in numerous other jurisdictions, through trial and arbitration. I have been appointed as counsel for both contested litigation classes and settlement classes on many occasions.

7. My leadership positions and professional recognition include the following:

a. Since 2018, I have served as the Missouri State Chair of the National Association of Consumer Advocates ("NACA"). In 2022, I was asked to assist with NACA's Judicial Nominating Committee.

b. From 2020 to about 2024, I served on the Board of Directors for the Kansas City Metropolitan Bar Association's Federal Courts Advocacy Section.

c. I have been selected by my peers as a Missouri & Kansas "Super Lawyer" in the areas of Consumer Law, Class Actions, and Mass Torts each year from 2018 through 2026.

d. I have spoken regularly at NACA and National Consumer Law Center conferences, including on case valuation and damages (2022), emerging trends in auto fraud (2021), case selection in auto fraud litigation (2020), and non-disclosure auto fraud claims (2019). In April 2024, I spoke at NACA's Spring Training Class Action Workshop.

8. Among the matters in which I have served as lead, co-lead, and/or class counsel are the following actions in this District:

a. *Coe v. Cross-Lines Retirement Center, Inc.*, No. 22-CV-2047-EFM-ADM (D. Kan.) (appointed class counsel May 23, 2023; $4.6 million class settlement finally approved July 29, 2024);

b. *Krant v. UnitedLex Corp.*, No. 2:23-cv-02443-DDC-TJJ (D. Kan.) (appointed class counsel; $1.3 million data breach class settlement finally approved December 19, 2024);

c. *Nakamura v. Wells Fargo Bank, N.A.*, No. 17-cv-4029-DDC-GEB (D. Kan.) (Servicemembers Civil Relief Act class settlement of $5 million plus fees approved in 2019); and

d. *Riley, et al. v. PK Management, LLC*, et al., No. 2:18-cv-02337-KHV-TJJ (D. Kan.) (habitability settlements totaling nearly $2.5 million finalized in 2021).

## III. BELL LAW'S HOURLY RATES AND THEIR TREATMENT IN THIS DISTRICT

9. Bell Law maintains a schedule of hourly rates for its attorneys and legal staff. Those rates are reviewed and adjusted periodically and are set by reference to the rates prevailing in the Kansas City metropolitan legal market for attorneys of comparable skill, experience, and reputation performing comparable consumer and complex litigation work.

10. *Coe v. Cross-Lines Retirement Center, Inc.* In the Cross-Lines class action, I served as court-appointed class counsel. In my declaration filed in support of Plaintiffs' fee application on July 18, 2024, I attested that Bell Law attorneys and staff billed a combined 1,793.9 hours at hourly rates including my own rate of $625.00, associate rates of $425.00 to $495.00, and paralegal and staff rates of $175.00 to $250.00. See Decl. of Bryce B. Bell ¶ 25,

ECF No. 224-1 (D. Kan. July 18, 2024). Bell Law's lodestar in that matter was $752,068.18, and the combined lodestar of all class counsel was $1,109,374.00 for over 2,777 hours. Id. ¶¶ 26–27, 29.

11. On July 29, 2024, Chief Judge Eric F. Melgren granted the fee application in full. In analyzing the fifth *Johnson* factor discussing the customary fee the Court found: "The hourly rates routinely applied by counsel in this case are well within the customarily charged rates in the Kansas City market." Mem. & Order on Motion for Reimbursement of Litigation Expenses, Attorneys' Fees, and Service Awards at 3, ECF No. 230 (D. Kan. July 29, 2024). The Court approved $1,501,401.16 in attorneys' fees (⅓ of the common fund) and $91,287.80 in litigation expenses. Id. at 6.

12. *Krant v. UnitedLex Corp.* In the UnitedLex data breach class action, I was appointed class counsel along with attorneys from Stueve Siegel Hanson LLP, Wagstaff & Cartmell LLP, Hiraldo P.A., and Dapeer Law, P.A. See Mem. in Support of Unopposed Motion for Final Approval at 15, ECF No. 27 (D. Kan. Nov. 26, 2024). The fee application there was supported by a lodestar cross-check: class counsel dedicated 841.7 hours to the litigation, producing a total lodestar of $660,538.10 against a requested fee of $433,333.00, resulting in a negative lodestar multiplier. Those figures compute to a blended hourly rate of approximately $785.00 across all timekeepers, including both attorneys and support staff. Id. at 12; Mem. & Order at 18, ECF No. 30 (D. Kan. Dec. 19, 2024).

13. The hourly rates Bell Law recorded and submitted in UnitedLex included my own rate of $825.00 (110.90 hours, $91,492.50). The declaration filed in support of the fee application reported the combined figures for all firms rather than a rate table for each timekeeper. See Decl. of J. Austin Moore ¶¶ 12–13, ECF No. 25-1 (D. Kan. Aug. 30, 2024). The

partner-level hourly rates of co-counsel in UnitedLex were each higher than my own $825.00 rate: J. Austin Moore of Stueve Siegel Hanson LLP at $975.00; Norman E. Siegel of Stueve Siegel Hanson LLP at $1,325.00; and Tyler W. Hudson of Wagstaff & Cartmell LLP at $975.00.

14. On December 19, 2024, Judge Daniel D. Crabtree granted the fee application in full, approving one-third of the $1,300,000 settlement fund, or $433,333.00, together with $28,755.17 in expenses. ECF No. 30 at 19–21, 22–23.

15. I note, in the interest of candor, that both *Cross-Lines* and *UnitedLex* were resolved under the percentage-of-the-common-fund method rather than a fee-shifting lodestar. In each case the Court examined Bell Law's hourly rates as part of the *Johnson* "customary fee" factor and the lodestar cross-check rather than making a freestanding rate determination. In *Cross-Lines*, however, the Court made the express finding quoted above that the rates applied — including my $625.00 rate — were "well within the customarily charged rates in the Kansas City market." ECF No. 230 at 3. Neither fee determination drew an objection from any class member or from any defendant.

16. Bell Law revised its rate schedule in mid-2023. Under that revised schedule my hourly rate for consumer class action and complex consumer litigation is $825.00 per hour. That is the rate at which my time was recorded and submitted in UnitedLex, it remains my current rate for that work, and it is the rate on which Bell Law's lodestar is calculated in pending fee applications.

17. The $625.00 rate reflected in my 2024 Cross-Lines declaration is not inconsistent with that schedule. It is Bell Law's practice to record time in a given matter at the hourly rates in effect when the engagement agreement in that matter was signed. The Cross-Lines engagement agreement was signed in 2021, well before the mid-2023 schedule took effect, and time in that

case was therefore recorded at the legacy 2021 rates rather than at the firm's current rates. The $625.00 figure is what Bell Law actually billed in Cross-Lines; it is not, and was not represented to be, the firm's prevailing rate as of 2024 to 2026.

18. I note that the Court's finding in Cross-Lines was that the rates applied there were "*well within* the customarily charged rates in the Kansas City market." ECF No. 230 at 3 (emphasis added). That finding places the $625.00 rate comfortably inside the customary range rather than at its ceiling, and in my opinion the customary range in this market extends meaningfully above that figure for attorneys with substantial class action and trial experience.

## IV. PREVAILING MARKET RATES FOR CONSUMER LITIGATION IN THIS DISTRICT

19. I understand that a fee determination under the Fair Credit Reporting Act, 15 U.S.C. § 1681n(a)(3), is calculated using the lodestar method — the number of hours reasonably expended multiplied by a reasonable hourly rate. See *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012). I further understand that the fee applicant bears the burden of showing that the requested rate corresponds to the prevailing market rate in the relevant community for similar work performed by lawyers of comparable skill, experience, and reputation.

20. I further understand that the Tenth Circuit has instructed that "[t]he first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time," and that when a district court "is presented with sworn affidavits … that the market commands rates at a certain level, the court must elevate the dictates of the market above its customary rate." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1255–56 (10th Cir. 1998) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), and citing *Blum v. Stenson*,

465 U.S. 886, 895 (1984)). I offer this Declaration as evidence of what the market in this community in fact commands.

21. In my opinion, the relevant community for this purpose is the Kansas City metropolitan legal market, which encompasses Kansas City, Kansas, Topeka, Lawrence, Overland Park, and Kansas City, Missouri. The bar that litigates consumer-protection cases in this District is drawn overwhelmingly from that market. The number of attorneys in Kansas who regularly prosecute FCRA, FDCPA, and related consumer claims is small, and the number who will try such a case to a jury verdict is smaller still.

22. Based on my experience litigating consumer cases in this District, my review of fee applications and fee determinations in this market, my participation in NACA and NCLC fee and rate programs, and my role as Missouri State Chair of NACA, it is my opinion that rates of $650.00 to $950.00 per hour are well within the prevailing market range for attorneys with substantial skill, real trial experience, demonstrated results, and responsibility for complex consumer litigation. The appropriate rate within that range depends on the particular attorney's qualifications, reputation, relevant experience, dedication to their skill development, and work performed. Years since admission alone do not measure the trial experience or specialized ability an attorney brings to a case. What an attorney has done in those years matters more than their number, and Mr. Keller has demonstrated a sustained commitment to honing his practice.

23. These rates reflect market realities specific to this practice area. Consumer-protection claims are almost invariably taken on a contingent basis. The consumers who bring them cannot pay hourly fees, and the statutory damages available are frequently too small to support the litigation on a percentage basis alone. The fee-shifting provisions Congress enacted are therefore the principal mechanism by which the private bar is compensated for this

work. My rate opinions reflect the prevailing market value of the attorneys' services and qualifications; they do not include an additional premium for the possibility of nonpayment.

## V. OPINION REGARDING THE REASONABLENESS OF THE REQUESTED RATE AND HOURS

24. I know Mr. Keller personally and professionally. In February 2024, Mr. Keller served as the lead instructor at a weeklong trial workshop in Santa Cruz, California, working with several other instructors to teach a group of about a dozen attorneys, including me. I have participated in other trial workshops led by Mr. Keller as well. That setting is a demanding one: participants try their own cases in front of faculty and peers, and an attorney's command of the record, judgment about what matters to a jury, and capacity to take criticism and improve are all on display. I observed Mr. Keller's work directly in that setting and his guidance, feedback, and instruction to myself and other participants was phenomenal.

25. I also know Mr. Keller to be a regular speaker at National Consumer Law Center conferences and workshops. Consumer practitioners are asked to teach at NCLC because their peers regard them as having something to teach; it is a meaningful marker of standing in this bar, and it is one reason attorneys of Mr. Keller's caliber command the rates they do.

26. Based on that experience, it is my opinion that Mr. Keller is an attorney of the highest caliber, both professionally and ethically. His legal acumen is matched only by the depth of responsibility he takes for his clients' causes. I do not offer that assessment lightly or as a courtesy; I would not submit it about an attorney I had not worked alongside.

27. I further understand the following regarding Mr. Keller's background, he was admitted to practice in 2014 and has over twelve years of experience as a licensed attorney; he founded Keller Law in Indiana, and now practices as a partner with Consumer Justice Law Firm,

which is based in Scottsdale, Arizona, while he resides in North Carolina; he is admitted in Indiana, New York, New Jersey, and various district courts and circuit courts; he is a graduate of the Gerry Spence Trial Lawyers College; he serves as Indiana State Chair of the National Association of Consumer Advocates (NACA); he received the National Consumer Law Center's 2025 Rising Star recognition for his work representing individuals and classes harmed by credit reporting agencies and debt collectors; and he has been rated a Super Lawyers Rising Star. He has tried more than a dozen cases to verdict in state and federal court.

28. I am aware that Mr. Keller resides in North Carolina and practices with Consumer Justice Law Firm, which is based in Scottsdale, Arizona. My opinion addresses the prevailing market rate for comparable services in this District. In my opinion, $850.00 per hour is supported by this market for an attorney with his demonstrated trial skill, results, specialized consumer-litigation experience, and professional reputation.

29. In my opinion, $850.00 per hour is reasonable for Mr. Keller's work in this matter. My own rate is one point of reference for the market, but my opinion of Mr. Keller's rate rests on his individual qualifications and accomplishments. His demonstrated trial ability, results, and standing as an instructor of other consumer attorneys place him among the exceptional practitioners in this field. Based on my familiarity with consumer practitioners in this District and my review of Mr. Keller's documented verdict history, I am not aware of another consumer-protection attorney in this market, or the national market, with a comparable record of jury-trial results.

30. I recognize that I have been in practice longer than Mr. Keller. In my opinion that difference does not counsel a lower rate for him, for a reason specific to this practice area and his work as a trial lawyer. Trial experience in consumer litigation is scarce and does not accumulate

evenly with years in practice. Many capable and successful consumer attorneys with twenty years of experience have never tried a case to verdict, because the economics of the practice push nearly every matter toward settlement or arbitration and because the risks often prove too high for most consumers and their lawyers—without substantial trial experience and the ability to exceed settlement offers with consistency—to leave to chance. Mr. Keller has tried at least a dozen cases to verdict in approximately the last four years. Concentrating that many verdicts into four years is a rate of trial experience far above the norm for this bar. It is that experience \\that the market prices, and it is what made the result in this case achievable.

31. Two considerations are central to that opinion. The first is that this case was tried. The overwhelming majority of consumer-protection claims in this District resolve on dispositive motions, in arbitration, or by settlement. Taking an FCRA claim through trial requires a materially different and scarcer skill set than negotiating a pre-suit resolution. The market values the specialized knowledge, preparation, and trial ability required to perform that work.

32. The second is the degree of success obtained, which is "the most critical factor in determining the reasonableness of a fee award." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted). On August 14, 2026, the jury returned a verdict finding Mr. Albuerne entitled to $150,000.00 in actual damages and $500,000.00 in punitive damages, and Ms. Jenkins entitled to $150,000.00 in actual damages and $500,000.00 in punitive damages — $1,300,000.00 in total. Verdict Form, ECF No. 170 at 1–2 (Questions 1 through 6). As to each Plaintiff, the jury made an express finding that Defendant acted willfully. Id. (Questions 2 and 5).

33. In my experience litigating consumer claims in Kansas and Missouri, a $1.3 million jury verdict against a debt collector or furnisher of credit information, supported by findings of willfulness as to both plaintiffs, is an exceptional result. I am not aware of a

comparable consumer verdict in this District in recent years. That result substantially exceeds what these claims would have been expected to command at settlement, and it supports a fee determination at the full requested rate without reduction.

34. I have also reviewed Ms. Findsen's declaration, and description of her work in this case. Those materials establish approximately twenty-nine years of legal practice and substantial experience in consumer financial-services litigation. They describe her responsibility for developing Plaintiffs' claims and obtaining partial summary judgment before Mr. Keller assumed responsibility for trial. My opinion concerning her rate is based on those materials and my knowledge of the local market.

35. I understand that Ms. Findsen seeks $675.00 per hour. In my opinion, that rate is reasonable in this market for an attorney with her experience and specialized knowledge performing the substantive litigation work described in her declaration. The development of the claims, analysis of the evidence, and summary-judgment work are substantial components of consumer litigation that require experienced counsel. Her rate should reflect those qualifications and responsibilities.

36. My opinions of Mr. Keller's and Ms. Findsen's rates are individual assessments of their respective qualifications and work. Their division of responsibility allowed Plaintiffs to draw on Ms. Findsen's case-development and dispositive-motion experience and Mr. Keller's trial experience and strategic decision-making.

37. I have reviewed the time records of Mr. Keller and Ms. Findsen. I believe the time spent was reasonable and necessary to the successful result. The time represents appropriate staffing and allocation of work. The preparation reflected in their records shows complex concepts synthesized into a form a jury could act on, which is the work that produced this

verdict. The entries are contemporaneous, adequately descriptive, and reflect lean staffing with little duplication between counsel.

38. Finally, while an upward adjustment appears warranted, I am aware of no basis in the record for a downward adjustment of the lodestar. Plaintiffs prevailed on every question submitted to the jury, including the willfulness findings that supported the punitive damages. This is not a case of partial or limited success.

## VI. CONCLUSION

39. Based on my knowledge of the Kansas City legal market, my experience litigating consumer cases in this District, the rate evidence described above, and counsel's respective qualifications and work in this matter, it is my opinion that the hourly rate of $850.00 for Mr. Keller is reasonable and the requested hourly rate of $675.00 for Ms. Findsen is also reasonable for the reasons stated above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed this 22nd day of September 2026, in Oakland, California.

***/s/ Bryce B. Bell***

**Bryce B. Bell**
BELL LAW, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
Tel: (816) 886-8206
BBB@BellLawKC.com