# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARCELINO ALBUERNE and
RUBY JENKINS,

Plaintiffs,

Case No. 5:24-cv-04043-JAR

v.

RENT RECOVERY SOLUTIONS, LLC,

Defendant.

**DECLARATION OF DURAN L. KELLER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND RELATED EXPENSES**

1. I am a partner at Consumer Justice Law Firm, a consumer protection firm based in Scottsdale, Arizona. I am counsel for Plaintiffs, appearing pro hac vice in this action. I live in North Carolina. My practice is national.
2. Before joining Consumer Justice in 2026, I operated my own law firm for more than a decade and maintained a national practice. I am licensed in New Jersey, New York, Indiana, and am admitted to practice in multiple federal and appellate courts.
3. I earned a Bachelor of Science in Business Management from Purdue University's Krannert School of Business, with a separate concentration in Spanish Language and Literature, and earned my J.D. from Southern University Law Center. I founded my own practice in 2014 and developed an individually focused, trial-intensive practice, rather than following a traditional large-firm or second-chair path.
4. My practice has always involved impact cases, those that affect the community and the country. I have been successful in multiple areas of the law, but my main concentration is on consumer-protection litigation and jury trials. This includes the FCRA and FDCPA. I have handled hundreds of matters in state and federal courts. The recurring trial issues include reporting systems, corporate investigation procedures, causation, emotional injury, willfulness, and punitive damages. I formed and operated my own practice to undertake the representations I believed needed my assistance.
5. Just since 2022, my jury-trial experience includes the following matters in which I served as lead trial counsel. Each was an individual case rather than an aggregate class recovery. These matters reflect my deliberate concentration on cases involving no or relatively small

out-of-pocket losses. In each, the jury's verdict far exceeded the defendant's highest settlement offer: True and correct copies of the verdict forms and judgment documents for these matters are attached collectively as Exhibit 1-B.

***Albuerne/Jenkins v. Rent Recovery*, 5:24-cv-4043 (D. Kan., 8/14/26)** – $1.3 million jury verdict in FCRA case.

***Huizar v. Horizon Bank*, 4:22-cv-60 (N.D. Ind., 6/24/26)** – $2.865 million jury verdict in FCRA case.

***Stewart v. Absolute Resolutions Investments*, 84D06-2202-CT-706 (Vigo Cty. Ct., 4/23/26)** – $2.145 million jury verdict in FCRA/FDCPA case.

*Scudder v. SoFi Lending Corp., LVNV Funding, LLC, and Resurgent Capital Services L.P.*, No. 3:21-cv-741-TJC-JBT (M.D. Fla. June 18, 2024) – $60,000 jury verdict in an FCRA/FDCPA/FCCPA case.

***Hustedt-Mai v. Hunter Warfield*, 79C01-1908-CT-114 (Tipp. County, 6/7/24)** – $1.95 million jury verdict in FCRA/FDCPA case.

***Gillaspy v. Club Newtone, Inc.*, 79C01-2108-CT-130 (Indiana, 2/29/24)** – $2.5 million jury verdict, affirmed by Indiana court of appeals, in a malicious prosecution case for woman who was sued after complaining of employer sexual misconduct.

***McPherson v. Suburban Ann Arbor, LLC*, 2:20-CV-13152 (E.D. Mich., 11/3/23)** – $388,000 jury verdict, affirmed by Sixth Circuit, involving FCRA, ECOA, and state violations for woman whose vehicle was wrongfully repossessed.

***Peters v. American Pacific Mortgage*, 2022CV30141 (Colorado, 5/26/23)** – $800,000 jury verdict arising from the reporting of a mortgage payment as thirty days late.

***Stewardson v. Cass County*, 3-18-cv-958 (N.D. Ind., 3/30/23)** – $1.25 million civil rights jury verdict (affirmed by Seventh Circuit) for man subjected to excessive force.

***Gaeta v. Mercer Belanger*, 79C01-1607-CT-110 (Indiana, 12/1/22)** – $331,000 FDCPA jury verdict, affirmed on appeal and establishing key standing precedent, for man stripped of right to hear alternative repayment plans by law firm initiating collection action.

***Ramirez v. Killian*, 2:18-CV-107 (N.D. of Tex., 3/25/22)** – $100,150 jury verdict, affirmed by Fifth Circuit, for federal civil rights violation involving taking of dog valued at $150

***Oaker v. FreeFlow Environmental*, 45D04-2012-CT-01266 (Lake County, Indiana 3/2/22)** – $226,500 consumer fraud and deceptive practices jury verdict for senior woman who was not provided with written contract and subjected to $4,000 bill for services she did not request.

6. I have handled hundreds of cases across state and federal courts, including dozens of trials. Only three of my jury trials involved a pretrial determination resolving any component of liability. Even in those matters, substantial issues remained contested at trial, including causation and damages and, in this action, willfulness. Each trial required the development of witness testimony, resolution of contested issues, proof of personal harm, and presentation of the case to a jury.
7. I am an elected member of the Board of Directors of the National Association of Consumer Advocates ("NACA") and continue to serve as NACA's Indiana State Chair. I have led NACA trial-practice programming and have repeatedly been invited to teach at national programs presented by NACA and the National Consumer Law Center ("NCLC"). My teaching has included deposition skills, opening statements and anticipating defenses in FCRA cases, closing arguments, FCRA litigation, damages in FCRA cases, trial skills, cultural competency, trauma-informed representation, and confronting bias and prejudice. I have led multiple week-long trial-skills retreats in Santa Cruz, California, for consumer-protection attorneys, teaching alongside two other instructors. I also train lawyers within my firm concerning discovery, trial preparation, witness examination, and presentation of consumer cases.
8. I have been appointed class counsel in federal court and state court. Most recently, in *Rock Creek Capital, LLC v. Tibbett*, No. 91C01-2009-CC-000222 (White Cir. Ct.), I represented a consumer whom Rock Creek sued to collect an alleged student-loan debt. After Rock Creek refused to resolve the individual matter by disposing of its debt collection case, I asserted individual and class counterclaims arising from Rock Creek's unlicensed debt-collection practices and pursuit of inflated and conflicting balances. Following a successful appeal, I negotiated a $500,000 common-fund settlement. The court certified a settlement class of 1,090 Indiana consumers whom Rock Creek had contacted to collect debts and a subclass of 72 consumers whom Rock Creek had sued. Under the approved distribution, class members were entitled to $100, while subclass members who had been sued were entitled instead to pro rata shares of the remaining settlement funds, resulting in thousands of dollars each for many individual consumers who did not previously know they had claims.

9. I have handled dozens of appeals and have successfully argued before state and federal appellate tribunals.
10. I continue to study while teaching, as I am always looking to improve my skills and work product. I participate in national consumer-law and trial-lawyer communities and regularly review new authority and developments.
11. Prior to law school, I worked in private practice settings in New York and New Jersey. During law school, I clerked with the Los Angeles District Attorney's Office Hardcore Gangs and Major Crimes Divisions and served as a mediator in the Southern University Law Center Mediation Clinic. While studying for the bar, I worked as a bilingual educator and interpreter and worked as a direct support professional for The Mentor Network, serving individuals with developmental disabilities.
12. I have deliberately concentrated on trial practice since early in my career. My formal training includes the three-week Trial Lawyers College program and an advanced Trial Lawyers College graduate program, presentations through the American Association for Justice and various courses including advanced depositions, a trial-advocacy course at Harvard Law School, and Trial School programs. I have remained active in national consumer-law and trial-lawyer communities, have been invited to contribute to Trial Lawyers College programming and publications, and continue to teach trial advocacy. I also taught torts and contracts as a professor at Purdue University for four years after earlier adjunct teaching of paralegal students.
13. Other lawyers consult me about trial preparation and ask me to join their cases for trial. For example, Matthew Osborne engaged me shortly before the *Peters* trial that I conducted in Colorado. I met the plaintiff and witnesses over the weekend, put together the trial plan, and conducted the trial which began the following Monday. I have declined other trial engagements because of existing commitments. Experienced consumer and trial lawyers also seek my advice about trial and litigation issues, including lawyers handling civil-rights, personal-injury, medical-malpractice, and other trial matters. These requests reflect the trial experience I have developed; they are not a request for any separate compensation in this case.
14. My services have been in high demand for years. I have maintained a full caseload and decline potential cases and requests to assist with trials every day of the week because I

cannot responsibly accept all of them. Lawyers in different jurisdictions and federal circuits have asked me to join cases for trial after appellate reversals, after claims were narrowed at summary judgment, and after unsuccessful settlement negotiations. The demand is not confined to Indiana or to cases I originate. Accepting this representation, preparing it for trial, and trying it required time that I otherwise could have devoted to existing matters and other potential cases and trial engagements that I declined.

15. Early in my career and while running my law firm, I served as the only attorney representing the Court Appointed Special Advocate ("CASA") in Tippecanoe County, Indiana, advocating for the best interests of abused and neglected children. That work gave me additional courtroom experience in procedurally and emotionally difficult matters. I later served for more than four years on the board of Tippecanoe County Legal Aid and the United Way Community Investment Committee. I have consistently devoted part of my professional work to access-to-justice and representation of individuals rather than institutional clients.

16. I earned NCLC's 2025 Rising Star Award, for attorneys practicing fifteen years or less who have made major contributions to consumer law. I have been selected to the Super Lawyers Rising Stars list each year since 2020.

17. Some of my professional presentations for which participants earned CLE credit include:

    a. Securing Significant Verdicts. Spring Training, National Association of Consumer Advocates (NACA) (Minneapolis, MN – 4/30/26).

    b. Trial Skills Workshop (2 Days). NACA Spring Training (Minneapolis, MN – 5/2/26 & 5/3/26).

    c. From Intake to Trial: Valuing Cases. 2025 Consumer Rights Litigation Conference & Class Action Symposium (Washington, D.C. – 10/8/25).

    d. FCRA: Deep Dive into Reinvestigation Cases. 2024 Consumer Rights Litigation Conference & Class Action Symposium (Orlando, FL - 10/26/24).

    e. Deposition Skills Workshop (2 Days). National Consumer Law Center & NACA Spring Training (Atlanta, Georgia – April 13-14, 2024).

    f. Successful Closing Arguments. FDCPA Track, NCLC & NACA Spring Training. (Atlanta, Georgia – 4/12/24).

g. Opening Statements & Anticipating Defenses. FCRA Track, NCLC & NACA Spring Training. (Atlanta, Georgia – 4/11/24).
h. Lead Instructor, Week-Long Trial Skills Retreat. (Santa Cruz, CA – 1/28/23-2/4/23).
i. Trial Skills Conversation Presenter.
j. Conducting Effective Depositions. Consumer Rights Litigation Conference (Chicago, Illinois – October 26, 2023).
k. How to Win Your FCRA Case. Consumer Rights Litigation Conference (Chicago, Illinois – October 27, 2023).
l. How to Understand Race Dynamics with Clients and Litigation. Consumer Rights Litigation Conference (Chicago, Illinois – October 28, 2023).
m. Trial Skills: Direct to Closing. National Association of Consumer Advocates Spring Training (May 2-3, 2023 – New Orleans, Louisiana).
n. How to Be Trauma-Informed Lawyers: Working with Vulnerable Clients for the NCLC's Consumer Rights Litigation Conference (Washington – 11/12/2022).
o. "Overview of the Fair Credit Reporting Act," "Repossession: You Can't Take My Car. Can Anything be Done? Legal Protections and How to Fight Back," and "Credit Issues, How to Deal with Them." – Indiana Supreme Court's Coalition of Court Access (October 28, 2022).
p. ABCs of the Fair Credit Reporting Act for the National Consumer Law Center's Consumer Rights Litigation Conference (December 6, 2021).
q. Mock Arbitration in Consumer Protection (May 10, 2021) at NACA's Spring Training.
r. Recognizing and Combatting Bias Against People of Color (April 2021).
s. Fair Credit Reporting Act for the Indianapolis Bar Association (August 2020).
t. Committee on Regional Training[1] – presenting on FDCPA (August 13, 2020).
u. NACA Spring Training on Damages in Fair Credit Reporting Act cases (May 15, 2020).

[1] CORT – a four (4) state training consortium that provides substantive law and skills training for legal services providers in Indiana, Michigan, Ohio, and West Virginia.

v. Nevada Legal Aid Consumer Law on Fair Credit Reporting Act and Fair Debt Collection Practices Act (Las Vegas, Nevada – February 2020).

w. National Consumer Law Center's ("NCLC") [2] Consumer Rights Litigation Conference (Boston - November 2019) on Preparing for Depositions with the Successful End Goal in Mind.

x. Coalition of Court Access conference (October 4, 2019 Indianapolis) on the Indiana Deceptive Consumer Sales Act.

y. Presented on Effective Deposition Techniques at the National Association of Consumer Advocates 2019 Fair Credit Reporting Act Conference (May 2019).

z. Coalition for Court Access Conference Speaker (November 2, 2018) on Repossessions/Counterclaims.

18. I was asked to join this case after summary judgment to lead preparation and presentation of the trial against Rent Recovery. Beth Findsen had developed the record through discovery and summary judgment. I reviewed the depositions, dispute materials, reporting records, account information, and rulings to determine how to present causation, each Plaintiff's harm, willfulness, and punitive damages. My concentrated FCRA and jury-trial experience allowed me to assume responsibility for trial preparation after summary judgment, absorb the existing record, identify the issues that required development for trial, and integrate the trial team's work without recreating the discovery and summary-judgment work Ms. Findsen had already completed.

19. I conducted jury selection, opening statement, the examinations of Christopher Coelho, Marcelino Albuerne, and Yasmin Appawu, and closing argument and rebuttal. I had principal responsibility for trial strategy, development and sequencing of testimony, and the presentation of damages and willfulness. Ms. Findsen conducted Ruby Jenkins's direct examination and handled substantial record, evidence, and instruction work.

20. I assigned distinct work for myself and Ms. Findsen. I prepared the principal framework for Ms. Jenkins's examination. Ms. Findsen used her prior work with Ms. Jenkins and her knowledge of the discovery record to supplement that framework with exhibits, individualized facts, and revisions for the examination she conducted.

[2] NCLC is a legal service 501(c)(3) law firm and organization that supports consumers and consumer protections attorneys throughout the county.

21. Preparation required separating each Plaintiff's CRA disputes and compensable injury from other credit events and preexisting difficulties; addressing objections to lender and credit reporting records; and presenting corporate procedures and contradictory documents through admissible evidence. Two active attorneys allowed one to handle a witness or issue while the other tracked the record or prepared the next assigned task. Rent Recovery appeared through three attorneys: Jonathan Aust, John Bedard, and Joshua Dickinson. It also had a corporate representative at trial along with Christopher Coelho, its selected Rule 30(b)(6) witness, former compliance officer, and former part owner. Plaintiffs seek Ms. Findsen's and my attorney time, with paralegal support. Local counsel Jenna Dakroub also appeared, but Plaintiffs do not seek compensation for her time.
22. Beth Findsen represented the Plaintiffs through discovery and summary judgment. Ms. Findsen's work was vital to obtaining necessary information for trial. She conducted the Rule 30(b)(6) deposition of Rent Recovery Solutions, LLC and her summary judgment work led to the liability finding prior to trial.
23. Ms. Findsen handled multiple tasks at once and mirrored my early-morning, late-evening trial preparation model. Ms. Findsen's trial preparation work assisted the Plaintiffs toward the result achieved and helped to facilitate my work. The $675 rate sought for Ms. Findsen's work is reasonable and necessary, in my opinion, in light of her knowledge, relevant experience and skill that I was able to witness since I joined the case. I believe she could command a higher rate in this and other jurisdictions.
24. Exhibit 1-A contains my time entries through August 28, 2026. The current schedule totals 168.00 requested hours at $800 per hour, or $134,400. I maintained contemporaneous or near-contemporaneous records and reviewed the entries against my work. The request concerns this action and related fee work, not work for other clients or work solely concerning dismissed defendants.
25. I exercised billing judgment both when recording time and when reviewing the schedule. I did not record every task I performed and do not assign a speculative number to that unrecorded time. I eliminated time I concluded should not be sought in real time, reduced certain entries below the time actually expended, excluded unrelated work performed during travel, and reduced pure travel time. My August 14 return travel, for example, excludes 0.9 hour for another matter and requests 2.2 hours after the travel reduction.

26. The preparation entries describe work performed on the listed dates. Returning to an examination or evidence issue reflects adjustments following witness preparation, a ruling, or testimony; it does not necessarily repeat completed work. I reviewed the entries for duplication, excessive time, administrative work, and unrelated work.
27. Brianna Frohman provided substantive trial-paralegal support, including locating evidence and prior testimony, maintaining witness-specific materials, assistance with juror research, and operating the presentation system. Her current schedule records 103.6 hours and seeks compensation for 80.8 hours at $190 per hour, or $15,352; 22.8 hours are priced at zero. Her separate declaration addresses her qualifications, records, and observations.
28. The expense schedule is authenticated separately. Requested nontaxable expenses and taxable costs are segregated to prevent duplicate recovery.
29. Plaintiffs request compensation for my services at $800 per hour. That requested rate reflects my concentrated consumer jury-trial experience, the demand for those services, and the independent market evidence Plaintiffs submit. My repeated trial results are part of that experience. The selection of $800 for this application does not represent the highest rate supported by my experience, results, and the demand for my services.
30. Counsel conferred with defense counsel about fees on August 28, 2026, but did not reach agreement. My current schedule includes work performed through August 28, 2026; it does not include work performed after that date or estimate future work. Plaintiffs will submit the additional compensable time incurred in preparing and litigating the fee application through a supplemental submission or with their reply.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 25, 2026.

*/s/ Duran Keller*
Duran L. Keller