# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MARCELINO ALBUERNE and
RUBY JENKINS,

Plaintiffs,

Case No. 5:24-cv-04043-JAR

v.

RENT RECOVERY SOLUTIONS, LLC,

Defendant.

**DECLARATION OF BETH K. FINDSEN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES**

I, Beth K. Findsen, declare under penalty of perjury that the following is true and correct based upon my personal knowledge and records.

**BACKGROUND AND PURPOSE OF DECLARATION**

1. I am Senior Counsel at Consumer Justice Law Firm, PLC, one of the largest national consumer-advocacy firms in the country, and I am counsel of record for Plaintiffs Marcelino Albuerne and Ruby Jenkins in this matter, in which I appear pro hac vice. I served as lead counsel for Plaintiffs from the inception of this case through the Court's ruling on summary judgment, and I remained as co-counsel through trial. I submit this declaration in support of Plaintiffs' motion for attorneys' fees and expenses.

2. I have practiced law for approximately twenty-nine years. For most of that time I have concentrated on consumer-protection litigation.

3. I led this case through a successful summary judgment on liability and then worked alongside specialized trial counsel Duran Keller in preparing and trying the case.

**EDUCATION, ADMISSIONS, AND EXPERIENCE**

4. I graduated magna cum laude from the University of Houston Law Center in 1997, where I was elected to the Order of the Coif, ranked fourth in my class, and was an Articles Editor on the Houston Law Review.

5. I have been licensed to practice in the State of Texas since 1997 and in the State of Arizona since 2004. I am admitted to practice before the United States District Courts for the District of Arizona and the Northern, Southern, and Eastern Districts of Texas, and before the United States Court of Appeals for the Ninth Circuit.

6. I began my career in commercial litigation at Baker Botts LLP in Houston, Texas, representing Fortune 500 clients in trial, labor, and employment litigation and handling matters before the National Labor Relations Board and the Equal Employment Opportunity Commission. Over my career I have litigated labor and employment claims, toxic-tort claims, commercial-contract disputes, trusts-and-estates litigation, and consumer-protection claims under a variety of federal

and state statutes, including the Fair Credit Reporting Act (FCRA), the Fair Debt Collection Practices Act (FDCPA), the Telephone Consumer Protection Act (TCPA), and the Truth in Lending Act (TILA). My clients have ranged from Fortune 500 companies to individual consumers.

7. From 2006 to 2018, I built and operated my own practice, the Law Office of Beth K. Findsen, PLLC, in Scottsdale, Arizona, concentrated on foreclosure defense, title, and real-property litigation on behalf of homeowners against national loan servicers. I also helped draft Arizona Senate Bill 1259, which passed the Arizona Senate 28–2 and required good-faith title investigations before trustee sales. My work now focuses on consumer-protection litigation against deceptive lenders, debt collectors, credit furnishers, and consumer reporting agencies.

8. I have acted as lead counsel on hundreds of federal consumer-rights actions and have recovered millions of dollars on behalf of consumers harmed by violations of federal consumer-protection law.

## TRIAL AND LITIGATION EXPERIENCE

9. I have extensive trial experience. I have taken more than seven cases to completion before a jury, in venues including Houston, Texas; the Maricopa County Superior Court in Arizona; the United States District Court for the District of Arizona; the United States District Court for the District of Nevada; and, in this case, the United States District Court for the District of Kansas. I have also tried cases to the bench.

10. During the years of the foreclosure crisis, from 2008 through 2016, I obtained more than fifty temporary restraining orders and litigated numerous evidentiary hearings on preliminary injunctions, enjoining foreclosures against consumers. That work required rapid factual development, emergency briefing, and courtroom advocacy under significant time pressure and with substantial consequences for the homeowners involved.

11. My current litigation practice is concentrated on FCRA and related consumer-credit matters. Over the five-year period reflected in my Litigation Analytics record, I have been counsel in approximately 135 consumer-protection matters and a comparable number of banking-and-finance matters, appearing predominantly as counsel for plaintiffs (approximately 97% of my appearances) in federal courts across the country, including the District of Arizona and the Northern, Western, and Southern Districts of Texas. These matters overwhelmingly involve FCRA claims against furnishers and consumer reporting agencies such as Experian, Equifax, and Trans Union — the same category of specialized litigation presented in this case.

## APPELLATE EXPERIENCE

12. I have a significant appellate practice. I have litigated before federal and state appellate courts throughout the country, including the United States Court of Appeals for the Ninth Circuit, the Arizona Court of Appeals, and the Arizona Supreme Court, and I have argued before those courts.

13. Among my consumer-significant appellate work, I voluntarily undertook the representation of the consumer debtors in *Mertola, LLC v. Santos*, 244 Ariz. 488 (2018), and secured a reversal of an Arizona Court of Appeals ruling concerning the statute of limitations and the acceleration of credit-card debt. The Arizona Supreme Court agreed to review a question of statewide importance likely to recur and held that, when a credit-card contract contains an optional acceleration clause, the cause of action to collect the entire outstanding debt accrues upon the

debtor's first uncured default, and the six-year statute of limitations begins to run at that point. That decision resolved a recurring question in favor of consumers and is regularly relied upon in Arizona consumer-debt litigation.

## STANDING IN THE CONSUMER-LAW COMMUNITY

14. I have been a member of the National Association of Consumer Advocates since 2012, and I am also a member of the American Bar Association, the State Bar of Texas, and the State Bar of Arizona.

15. I have been recognized publicly for my consumer-protection and foreclosure work. During the foreclosure crisis, I served on the foreclosure-law panel at the Sandra Day O'Connor College of Law at Arizona State University, appeared in foreclosure-litigation documentaries, and appeared in the news media as a legal expert on foreclosure and consumer issues. I have also authored and co-authored amicus curiae briefs before the Arizona Supreme Court on consumer and mortgage issues, and I have written and advocated on consumer-protection matters.

## MY WORK AS LEAD COUNSEL IN ALBUERNE/JENKINS

16. I served as lead counsel for Plaintiffs from the inception of this case through the Court's ruling on summary judgment. I drafted and filed the Complaint and jury-trial demand alleging FCRA furnisher violations under 15 U.S.C. § 1681s-2(b) against Rent Recovery Solutions, LLC, and I developed and directed the litigation and discovery strategy throughout the case.

17. I personally handled the discovery in this case, including all of the depositions. Among other things, I took the Rule 30(b)(6) deposition of Rent Recovery's corporate representative, Christopher Coelho; prepared for and defended the depositions of both Plaintiffs, Marcelino Albuerne and Ruby Jenkins, and of Plaintiffs' expert, Douglas A. Hollon.

18. I drafted the Plaintiffs' successful Cross Motion for Partial Summary Judgment on FCRA liability and the supporting appendix, and I prepared Plaintiffs' opposition to Rent Recovery's cross-motion for summary judgment. The Court denied Rent Recovery's motion and granted Plaintiffs' Motion for Partial Summary Judgment, establishing Rent Recovery's FCRA liability before trial.

19. After the liability ruling, Mr. Keller joined the case to try it, and he and I collaborated in preparing and presenting the case at trial. I performed and participated in trial-preparation work, including the witness list and deposition designations and objections and Plaintiffs' trial briefs.

20. At trial, I appeared as co-counsel before Judge Robinson. I participated in jury selection and in the argument of the motions in limine and evidentiary matters taken up on the record, and I conducted the direct examination of Plaintiff Ruby Jenkins. I also prepared examination materials for, and supported the presentation of the other witnesses in Plaintiffs' case-in-chief.

21. My work in this case is itemized in the contemporaneous time records submitted with Plaintiffs' motion. After the billing-judgment reductions reflected in those records, Plaintiffs seek compensation for 293.24 hours of my work at $675 per hour, totaling $197,937.00, exclusive of costs.

## MR. KELLER'S TRIAL WORK IN ALBUERNE/JENKINS

22. Before this case and before he joined the firm, I attended at least two consumer-law programs taught by Duran Keller, including a deposition program. I later applied techniques from that program to my own work. Mr. Keller contributed invaluable specialized trial skills, including the trial methods he teaches within our firm and that I learned from working with him. My clients have benefited directly from those methods.

23. Mr. Keller was brought into this case as trial counsel and assumed lead responsibility for trying the FCRA furnisher claim against Rent Recovery Solutions, LLC after liability had been established and the consumer reporting agencies had been dismissed. I observed him learn and integrate a substantial record, develop the trial themes and damages presentation, prepare witnesses and examinations, and address the evidentiary and instruction issues the case required.

24. At trial, Mr. Keller served as lead trial counsel. I personally observed him conduct jury selection, deliver the opening statement, examine the defense corporate representative and other witnesses, argue evidentiary and instruction issues, and prepare and deliver the closing argument and rebuttal. His command of the FCRA subject matter — including the furnisher investigation process, ACDVs, e-OSCAR, and the interplay between corporate systems and the statutory duties at issue — allowed the jury to understand technical material that is not common to ordinary civil practice and reduced the need for outside expert testimony.

25. Mr. Keller's specialized trial experience was evident throughout. On more than one occasion he was able to identify and argue controlling authority and rules of evidence in real time, without leaving the courtroom to research the issue. Having tried consumer cases myself, I can attest that the level of preparation, courtroom judgment, and command of both the record and the governing law that he demonstrated in this case reflect substantial and uncommon trial skill.

26. The jury found that Rent Recovery Solutions acted willfully and returned verdicts of $150,000 in actual damages and $500,000 in punitive damages for each Plaintiff, for a total verdict of $1.3 million. That result is consistent with my assessment of the quality and effectiveness of the trial work performed.

27. In my opinion, the $800 rate sought for Mr. Keller is reasonable and conservative given his concentrated consumer jury-trial experience, the results he has obtained, the quality of the work I observed, and the rates charged by experienced attorneys handling complex federal litigation, including members of the defense bar.

## HOURLY RATE

28. Based on my experience litigating specialized federal consumer cases nationally and working with counsel in multiple jurisdictions, I believe that a reasonable current hourly rate for my work in this matter is $675. This rate reflects my approximately twenty-nine years of litigation experience, my specialized and sustained concentration in FCRA and consumer-protection litigation, my trial and appellate experience, and the responsibility I carried as lead counsel in this case through summary judgment and as co-counsel at trial.

29. My experience, trial and appellate record, and specialization have continued to develop, and the requested rate is consistent with the level of responsibility and skill required by this litigation.

30. The hours reflected in the records submitted with Plaintiffs' motion accurately represent the compensable time I expended on this matter and the related tasks, and the costs reflected in Plaintiffs' motion accurately represent the costs that Plaintiffs and I incurred. Before

submission, I reviewed the records for duplication, clerical work, excessive time, and overlap with Mr. Keller's work, and I excluded time that I concluded should not be sought, including two hours recorded for mock-opening work.

31. Counsel conferred with defense counsel about fees on August 28, 2026, but did not reach agreement. My current schedule includes work performed through August 28, 2026; it does not include work performed after that date or estimate future work. Plaintiffs will submit the additional compensable time incurred in preparing and litigating the fee application through a supplemental submission or with their reply.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 25, 2026.

*/s/ Beth K. Findsen*
Beth K. Findsen