# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**MARCELINO ALBUERNE and**
**RUBY JENKINS,**

Case No. 5:24-cv-04043-JAR

Plaintiffs,

v.

**RENT RECOVERY SOLUTIONS, LLC,**

Defendant.

**DECLARATION OF MATTHEW OSBORNE IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND RELATED EXPENSES**

I, Matthew Osborne, declare under penalty of perjury under the laws of the United States as follows:

## I. BACKGROUND AND QUALIFICATIONS

1. I am over eighteen years old, competent to testify, and make this Declaration from my personal knowledge except where I identify information that I reviewed in forming an opinion.

2. I am the Director of Consumer Protection at Ramos Law, a law firm based in Denver, Colorado. I began practicing law in 2009 and have devoted the substantial majority of my practice to representing consumers against large corporate defendants. I have successfully represented thousands of consumers.

3. I am admitted to practice in Colorado, Arizona, and California, before the United States Court of Appeals for the Tenth and Third Circuits, and in the United States District Court for the Western District of Oklahoma, Northern District of Illinois, and Eastern District of Missouri. My consumer-protection work has included matters in multiple jurisdictions, including Colorado, Arizona, California, and Missouri.

4. Before becoming an attorney, I served for five years in the United States Navy. I served at the Pentagon and was present during the September 11, 2001 attacks, and I served in Iraq from 2003 through 2004. I earned my bachelor's degree from Columbia College while serving in the Navy and later earned my law degree from Michigan State University.

5. My practice and professional activities have made me generally familiar with lawyers who handle consumer-protection litigation within the Tenth Circuit and nationally, the skills required to litigate and try those cases, and the hourly rates charged or sought by experienced consumer attorneys whose practices extend across jurisdictions.

## II. MY FIRSTHAND KNOWLEDGE OF DURAN KELLER'S WORK

6. I have known Duran Keller for years through the national consumer-protection bar. We have attended and presented at programs sponsored by the National Association of Consumer Advocates and the National Consumer Law Center. I first recall observing one of his presentations at a national Fair Credit Reporting Act conference in Long Beach, California, concerning conducting effective depositions.

7. I have attended multiple trial-skills educational programs and workshops taught by respected trial lawyers. Before our trial in *Peters v. American Pacific Mortgage*, I attended a multi-day trial-skills retreat led by Mr. Keller. Of all the trial-skills programs I have attended, Mr. Keller's was the best and most useful. The methods he taught took my own trial practice to another level and materially improved how I prepared and presented later cases.

8. The training was effective because Mr. Keller taught concrete methods he uses in real cases, gave direct feedback, and showed participants how to identify the human story, frame the case, select a jury, and present the evidence in a way jurors can understand. His

abilities in jury selection and case framing distinguish him even among excellent trial lawyers.

9. After that workshop, I wanted an opportunity to try a case with Mr. Keller. I asked him to join me for the trial in *Peters v. American Pacific Mortgage*, Case No. 2022CV30141, in Colorado. I selected him because the case presented unusual difficulty: it was being tried in a conservative venue, and the disputed mortgage reporting could be characterized as technically accurate even though it was misleading. Those circumstances made both liability and persuasion difficult.

10. Mr. Keller joined the matter shortly before trial, quickly learned the record, worked with the client and witnesses, and helped direct the trial strategy. I personally observed his ability to identify the facts that mattered, frame the reporting issue, develop the damages proof, and present the case to the jury. On May 26, 2023, the jury returned an $800,000 verdict for our client.

11. My decision to bring Mr. Keller into *Peters* was confirmed by what I observed while trying the case with him. His preparation, judgment, and ability to make a difficult case understandable materially contributed to the result. I would ask him to try another difficult consumer case with me.

12. I continue to consult Mr. Keller about difficult issues in my own cases. When I am uncertain how to frame a case or resolve a strategic problem, he is the first lawyer I call. His is the rare judgment I trust enough to follow even when it differs from my initial assessment. I have consulted him in that manner in other significant consumer matters, including litigation in the Tenth Circuit.

13. Based on my personal experience working and teaching alongside consumer attorneys around the country, my observation of Mr. Keller's training, my work with him in *Peters*, and my later consultations with him in various other cases, I consider him the best

consumer-protection trial lawyer in the country. Lawyers throughout the consumer bar know his results and seek his advice about trial strategy and case presentation.

14. This opinion is not based on personal friendship or professional courtesy. I have watched Mr. Keller analyze and try a difficult case, have applied the methods he taught, and have seen the effect those methods had on my own work. I am not aware of another consumer-protection attorney with a comparable concentration of recent jury-trial experience and results.

## III. EXPERIENCE AND THE REASONABLE VALUE OF MR. KELLER'S WORK

15. In my opinion, experience is measured by what the attorney has actually done, the difficulty and number of matters the attorney has tried, the results achieved, and the judgment developed through that work. An attorney may practice for decades without acquiring the concentrated jury-trial or litigation experience another attorney develops through repeated high-level advanced cases and trials.

16. Experienced attorneys who have practiced for thirty and forty years seek Mr. Keller's strategic advice. That fact is more informative about his market value than a simple comparison of bar-admission dates. His concentrated trial experience, demonstrated results, national reputation, and demand among other lawyers place him at the top of the consumer-protection trial bar.

17. I understand that Mr. Keller served as lead trial counsel in this action and that the jury returned a $1.3 million verdict after finding that Rent Recovery Solutions acted willfully as to both Plaintiffs. I have reviewed Mr. Keller's documented verdict history, including the verdict in this action, and it is exceptional within consumer-protection litigation.

18. Based on my knowledge of rates for nationally practicing consumer-protection attorneys and my firsthand knowledge of Mr. Keller's ability, reputation, results, and demand, I believe that a rate of $975 per hour or more reasonably reflects the market value of his

services. Plaintiffs' requested rate is below the rate I believe his qualifications and work support and is conservative.

19. My opinion does not depend on treating all consumer lawyers as interchangeable. It is specific to Mr. Keller. His value lies in the combination of specialized strategic and trial work, simplicity to a jury, not to mention his consumer-law knowledge, repeated jury-trial experience, case-framing ability, judgment, efficiency, and results that I have personally observed.

20. I understand that Ms. Findsen has practiced law for approximately twenty-nine years, has handled hundreds of Fair Credit Reporting Act matters, developed Plaintiffs' claims through discovery, and obtained partial summary judgment before trial. Based on those qualifications and responsibilities, and after reviewing her declaration, I believe that the requested rate of $675 per hour is reasonable for her work.

## IV. CONCLUSION

21. For these reasons, it is my opinion that Plaintiffs' requested hourly rate of $800 for Mr. Keller is conservative and reasonable. In my opinion, his qualifications and market value would support a rate of $975 per hour or more. I also believe that the requested hourly rate of $675 for Ms. Findsen is reasonable.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed this 22 day of September, 2026, in Northglenn, CO.

[signature]

Matthew Osborne
Director of Consumer Protection
Ramos Law